PETERSON, Bart, et al., Appellants,

v.

BORST, Philip C., Appellee.

and

Boyd, Rozelle, et al., Appellants,

v.

Sadler, Doris Anne, et al., Appellees.

No. 49S02–0302CV71.

Supreme Court of Indiana.

March 19, 2003.

William R. Groth, Geoffrey S. Lohman, A. Scott Chinn, Anthony W. Overholt,

April E. Sellers, Fred R. Biesecker, Michael A. Wukmer, Indianapolis, IN, for Appellants.

William Bock, III, Mark J. Colucci, Matthew T. Klein, Indianapolis, IN, for Appellee.

Edward W. Harris, III, Maggie L. Smith, Thomas F. O'Gara, Indianapolis, IN, for Amicus Curiae.

## ON MOTION TO TRANSFER PURSUANT TO APPELLATE RULE 56(A)

PER CURIAM.

At issue in this appeal is the validity of the redistricting plan for the City–County Council of the City of Indianapolis and of Marion County, Indiana ("Council"), which was adopted in the final judgment of the Marion Superior Court, sitting *en banc.* We reverse because we conclude that the Superior Court's adoption of a plan that has been uniformly supported by one major political party and uniformly opposed by the other is incompatible with applicable principles of both the appearance and fact of judicial independence and neutrality. Because of the emergency nature of this appeal, we adopt a plan that we have drawn with the consideration of only factors required by applicable federal and State law, and without consideration of party affiliation or incumbency. This plan will be in effect for the May 6, 2003, primary election unless a different plan is adopted by ordinance prior to March 26, 2003.

### Background and Applicable Statutes

In 1969, the Indiana General Assembly enacted what is commonly referred to as the "Unigov" Act,[1] which reorganized the municipal and county governments in counties containing a city of the first class, and which then and now applies only to Marion County and the City of Indianapolis. This legislation enabled consolidation of certain governmental functions, eliminating the overlapping jurisdictions of various county and municipal boards and departments. *See Dortch v. Lugar,* 255 Ind. 545, 550, 266 N.E.2d 25, 30 (1971) (upholding the constitutionality of the Unigov Act).

> [T]he Act provides that the Mayor of the consolidated city shall be elected by all of the voters of the consolidated city and the county voting for such office. The Mayor is to be the chief executive and administrative officer of the consolidated city with the power to supervise the work of its departments, special taxing districts and special service districts. A twenty-nine (29) member City–County Council is also provided for which is to operate as the primary legislative body of the consolidated city and county. Its powers ... include generally the power to adopt budgets, levy taxes, make appropriations and adopt resolutions or ordinances necessary to the exercise of such powers. Four (4) members of the Council are elected from the county-at-large with the remaining twenty-five (25) elected individually from single-member electoral districts as equal as practicable in population.

255 Ind. at 562, 266 N.E.2d at 36–37 (citations omitted).

Boundaries of the twenty-five single-member electoral districts are drawn after every federal decennial census according to the following "Redistricting Statute:"

> (a) *The city-county legislative body shall, by ordinance, divide the whole county into twenty-five (25) districts that:*

---

1. 1969 Ind. Acts ch. 173.

(1) *are compact,* subject only to natural boundary lines (such as railroads, major highways, rivers, creeks, parks, and major industrial complexes);

(2) contain, as nearly as is possible, equal population; and

(3) do not cross precinct boundary lines.

This division shall be made in 1992 and every ten (10) years after that, and may also be made at any other time, subject to IC 3–11–1.5–32.

. . . .

(d) *If the legislative body fails to make the division before the date prescribed by subsection (a) or the division is alleged to violate subsection (a) or other law, a taxpayer or registered voter of the county may petition the superior court of the county to hear and determine the matter.* There may not be a change of venue from the court or from the county. *The court sitting en banc may appoint a master to assist in its determination and may draw proper district boundaries if necessary.* An appeal from the court's judgment must be taken within thirty (30) days, directly to the supreme court, in the same manner as appeals from other actions.

Ind.Code § 36–3–4–3 (1998) (emphasis added).

With inapplicable exceptions, ordinances enacted by the city-county legislative body (i.e., the Council) are subject to veto by the Mayor of Indianapolis under the following statute:

(a) Within ten (10) days after an ordinance or resolution is presented to him, the executive shall:

(1) approve the ordinance or resolution, by entering his approval on it, signing it, and sending the legislative body a message announcing his approval; or

(2) *veto the ordinance or resolution,* by returning it to the legislative body with a message announcing his veto and stating his reasons for the veto. . . .

. . . .

(c) *Whenever an ordinance or resolution is vetoed by the executive, it is considered defeated* unless the legislative body, at its first regular or special meeting after the ten (10) day period prescribed by subsection (a), passes the ordinance or resolution over his veto by a two-thirds ( 2/3) vote.

Ind.Code § 36–3–4–16 (1998) (emphasis added).

In 2002, the Council began the redistricting process pursuant to the Redistricting Statute. Among the plans considered were the "Borst Plan" proposed by Phillip C. Borst ("Councillor Borst"), Republican leader of the Council, and the "Boyd Plan" proposed by Rozelle Boyd ("Councillor Boyd"), the Democratic leader of the Council. On October 7, 2002, the Council passed an ordinance approving the Borst Plan. The vote was 15 to 14, with all Republican members voting in favor of the plan and all Democrats voting against it. On October 19, 2002, Indianapolis Mayor Bart Peterson, a Democrat, vetoed the ordinance, asserting among other things that the Borst Plan violated the requirement of I.C. § 36–3–4–3(a) that the Council districts be compact.

The Council did not attempt to override Mayor Peterson's veto. Instead, on October 25, 2002, Councillor Borst, in his individual capacity and as Vice President of the Council, filed a "Petition for Determination by the Marion Superior Court *En Banc,*" requesting that the Marion Superior Court declare that the Borst Plan was valid under I.C. § 36–3–4–3 and order that it be implemented in the upcoming munici-

pal elections scheduled for May 6, 2003. Mayor Peterson intervened in this action.

On November 8, 2002, Councillor Boyd and others (together "Councillor Boyd") filed "Complaint for Declaratory and Injunctive Relief and Petition to Redistrict," naming various members of the Marion County Election Board as defendants. Councillor Boyd asked, among other things, that a master be appointed to assist the Superior Court in drawing new district boundary lines. Mayor Peterson also intervened in this action. The Superior Court consolidated the two actions,[2] conducted a trial on February 6, 2003, and issued its decision on February 14, 2003.

The Superior Court is composed of 32 judges, of whom 17 are Republicans and 15 are Democrats.[3] Sixteen judges—all Republican—voted in favor of approving the Borst Plan. Thirteen judges—all Democrats—voted against this result. Three judges did not participate in the decision.

On February 14, 2003, Councillor Boyd and Mayor Peterson filed a notice of appeal. On February 20, 2003, this Court accepted jurisdiction over the appeal pursuant to Appellate Rule 56(A) and directed an expedited appellate process. The City of Fort Wayne was granted *amicus curiae* status. With the cooperation of the parties and the Superior Court, the record on appeal was submitted to the Court, the matter has been fully briefed, and oral argument was conducted March 6, 2003.

The demands of the election calendar have imposed special problems in hearing this appeal. The filing period for seeking an election to the Council had nearly expired when the case was brought to this Court. We directed that filing should re-main open until further order. As noted above, we required that the case be briefed and argued in a matter of days. Our own decision-making has been treated as a matter of urgency, in which we have dispensed with certain customs. Once it became apparent that there was not a majority to affirm the Superior Court's judgment, we have concentrated on fashioning the remedy. As is sometimes the case in appellate courts, today's *per curiam* does not necessarily reflect the initial position of each of the members. In light of the press of time, we have joined in today's decision without taking the time required to iron out or explicate those differences.

The dispositive issue raised by Councillor Boyd and Mayor Peterson in this appeal is whether the Superior Court violated its duty of neutrality by adopting a redistricting plan developed by one political party. Councillor Boyd and Mayor Peterson request this Court to reverse the judgment of the Superior Court and to appoint a special master to assist this Court in drawing proper district boundaries. Councillor Borst urges this Court to affirm the Superior Court's decision, contending that the proceedings before the Superior Court were fundamentally fair, that the Superior Court's judgment is supported by the evidence, and that its decision is entitled to substantial deference.

**The Judiciary's Duty of Independence and Neutrality**

This is the first time that the Redistricting Statute has ever been invoked, and none of the parties have called to our attention, and we are not aware of, any Indiana state court decisions resolving partisan redistricting disputes. Thus, we

---

2. The Superior Court also severed a claim against the Marion County Election Board from the action brought by Councillor Boyd.

3. The Superior Court judges are elected to their positions under a statute designed to assure relative parity between the number of Republican and Democratic judges. *See* Ind. Code § 33–5.1–2–8 (1998).

write on a clean slate as to the duties and obligations of the Indiana judiciary in such circumstances.

One "stark fact" about "apportionment is its embroilment in politics, in the sense of party contests and party interests." *Colegrove v. Green,* 328 U.S. 549, 554, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946). That is certainly the situation here. It is clear that the redistricting process in this case is a spirited partisan dispute between the Republican majority of the Council on the one hand and the Democratic minority of the Council and the Democratic mayor on the other.

Partisan disputes over redistricting can be expected within and between the legislative and executive bodies of government. However, the Redistricting Statute enlists the judiciary as an arbiter when these two branches become deadlocked. Although the judges of the Superior Court are chosen by partisan election, *see* Ind.Code § 33–5.1–2–8 (1998), all parties in this dispute clearly and unequivocally champion judicial independence, free of partisan political decision-making.

The principle of judicial independence and neutrality is embodied in Indiana's Code of Judicial Conduct. "An independent ... judiciary is indispensable to justice in our society." Ind. Judicial Conduct Canon 1(A). "A judge shall ... act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Jud. Canon 2(A). "A judge shall not allow ... political or other relationships to influence the judge's judicial conduct or judgment." Jud. Canon 2(B). "A judge shall not be swayed by partisan interests ...." Jud. Canon 3(B)(2).

The United States Supreme Court has also addressed this issue, albeit in a somewhat different context. In reviewing a federal district court's legislative redis-

tricting plan for Mississippi's Senate and House of Representatives, the Supreme Court stated that when a federal court is confronted with the need to devise a redistricting plan after the legislature has failed, the court will be held to stricter standards in accomplishing its task than will a state legislature.

These high standards reflect the unusual position of federal courts as draftsmen of reapportionment plans. We have repeatedly emphasized that legislative reapportionment is primarily a matter for legislative consideration and determination.... The federal courts by contrast possess no distinctive mandate to compromise sometimes conflicting state apportionment policies in the people's name. In the wake of a legislature's failure constitutionally to reconcile these conflicting state and federal goals, however, a federal court is left with the unwelcome obligation of performing in the legislature's stead, while lacking the political authoritativeness that the legislature can bring to the task. In such circumstances, *the court's task is inevitably an exposed and sensitive one that must be accomplished circumspectly, and in a manner free from any taint of arbitrariness or discrimination.*

*Connor v. Finch,* 431 U.S. 407, 414–15, 97 S.Ct. 1828, 52 L.Ed.2d 465 (1977) (emphasis added, citations and internal quotations omitted). *See also Burling v. Chandler,* 148 N.H. 143, 804 A.2d 471, 483 (2002) ("While political considerations are tolerated in legislatively-implemented redistricting plans, they have no place in a court-ordered plan.").

■ Based on the unchallenged principle of judicial independence and neutrality, we hold that in resolving partisan redistricting disputes, Indiana judges must consider only the factors required by applicable federal and State law. We conclude

that this was the intent of the legislature in providing both the criteria for district boundaries and the dispute resolution mechanism that it did. Whatever role politics may legitimately play in the decisions and maneuverings of the legislative and executive branches, if those branches cannot reach a political resolution and the dispute spills over into an Indiana court, the resolution must be judicial, not political. Thus, Indiana judges may not consider the partisan political consequences of redistricting plans because this is not among the constitutional and statutory factors that inform a judicial decision.

We do not in any way intend to imply that the Superior Court or any of its judges acted with any improper motive or intentionally disregarded their duties of impartiality and independence. We do not question the earnest good faith of the judges in attempting to discharge their judicial obligations. The Redistricting Statute states that the court *"may* draw proper district boundaries *if necessary."* I.C. § 36–3–4–3(d) (emphasis added). In the absence of controlling authority from this Court, the decision of the Superior Court to adopt the Borst Plan found support in cases from other jurisdictions, discussed below, that approved redistricting plans advanced by one party to a dispute. We conclude, however, that the court's approval of the Borst Plan in the circumstances of this particular case unavoidably introduced the appearance if not the fact of political considerations into this judicial process and thus makes redrawing the boundaries necessary.

### The Duty of Independence and Neutrality Precludes Adoption of the Borst Plan

This dispute shows that the parties' principal concern is the political implications of the Borst Plan, the Boyd Plan, and other competing plans that have been con-

sidered in the course of this process. The parties in this case have deadlocked politically and have come to the courts for a judicial resolution. That resolution must be guided by the principles embodied in Indiana's Code of Judicial Conduct, discussed above.

■ A court called upon to draw a map on a clean slate should do so with both the appearance and fact of scrupulous neutrality. A number of courts, federal and state, have taken that view.

> Judges should not select a plan that seeks partisan advantage—that seeks to change the ground rules so that one party can do better than it would do under a plan drawn up by persons having no political agenda—even if they would not be entitled to invalidate an enacted plan that did so.

*Prosser v. Elections Bd.,* 793 F.Supp. 859, 867 (W.D.Wis.1992) (three-judge district court adopting its own redistricting plan that combined features of two best plans submitted). The reason is the most fundamental of tenets of judicial administration: the process must be fair, and it must appear to be fair. Judges working on a clean slate to fashion a remedy in a redistricting case where the political process failed to adopt one should be guided by the same principles that govern shaping equitable relief in any lawsuit.

■ We conclude that the Superior Court's decision to adopt the Borst Plan, which was uniformly endorsed by members of one party and uniformly rejected by members of the other, does not conform to applicable principles of judicial independence and neutrality.

We find instructive a decision by a federal district court in St. Louis in a similar case last year. *See Corbett v. Sullivan,* 202 F.Supp.2d 972 (E.D.Mo.2002). The St. Louis County Charter provides for ap-

pointment of a "County Council Reapportionment Commission" every ten years to divide the county into seven single-member districts. There is no procedure for redrawing the districts if this Commission fails to do so. When the Commission was unable to approve a plan, one party filed suit in federal district court to resolve the issue.[4] The court stated:

Although ostensibly the parties have asked me to redraw the lines, they really want me to choose among their competing redistricting plans....

I find that it would be inappropriate for me to choose any of the plans proposed by the parties. Each has advantages and disadvantages .... Each of the parties' plans, however, has been shown to be a product of political or racial gerrymandering, at least to some extent, and they all consider many factors other than those referenced in the County Charter. Selecting any of them would be a political act, inappropriate for a judge to take.

I conclude I must draw my own map in order to avoid making a decision based on politics. In doing so I should only consider the factors required by the United States and Missouri constitutions and those set out in the County Charter, so long as doing so does not run afoul of the Voting Rights Act. I have done this .... This plan considers only the three factors listed in the County Charter—equality, contiguity, and compactness.... It does not consider the political consequences because that is not the proper role for a Court. Although this is certainly not the best way to make such important governmental decisions, where the political process has failed as spectacularly and repeatedly as it has in

the St. Louis County Council redistricting process, this appears to be the only solution currently available.

*Id.* at 973–74.

The New Hampshire Supreme Court, "drawn reluctantly" into a redistricting dispute last year, also confronted its duty to act when the legislature had failed.

In furtherance of that duty, we establish a plan for new house districts.... This plan corrects the constitutional deficiencies in the existing districts and eliminates the present inequities.... We are indifferent to political considerations, such as incumbency or party affiliation.

....

Based upon our review of the submitted plans, we conclude that none can be adopted by the court.... Each plan has "calculated partisan political consequences (the details of which are unknown) .... We have no principled way to choose [among] the plans, especially knowing that we would be endorsing an unknown but intended political consequence by the choice we make." *Wilson [v. Eu],* 1 Cal.4th 707, 4 Cal.Rptr.2d 379, 823 P.2d [545,] 576–77 [ (1992) ].

Accordingly, the court has devised a reapportionment plan consistent with neutral State and federal constitutional principles.

*Burling v. Chandler,* 804 A.2d at 474, 483–84. *See also Smith v. Clark,* 189 F.Supp.2d 529, 540 (S.D.Miss.2002) (court considered constitutional, statutory, and several neutral factors when constructing a congressional redistricting plan), *prob. juris. noted sub nom. Branch v. Smith,* 536 U.S. 903, 122 S.Ct. 2355, 153 L.Ed.2d 178 (2002); *Arizonans for Fair Representation*

---

4. A federal court was also called on to decide the issue in the prior two reapportionments.

*See Corbett,* 202 F.Supp.2d at 975.

*v. Symington,* 828 F.Supp. 684 (D.Ariz. 1992) (court prepared its own plan by modifying the best of the plans submitted), *appeal dismissed sub nom. Arizona State Senate v. Arizonans for Fair Representation,* 507 U.S. 980, 113 S.Ct. 1438, 122 L.Ed.2d 804 (1993), and *aff'd mem. sub nom. Hispanic Chamber of Commerce v. Arizonans for Fair Representation,* 507 U.S. 981, 113 S.Ct. 1573, 123 L.Ed.2d 142 (1993); *In re Legislative Districting of State,* 370 Md. 312, 805 A.2d 292, 328–29 (2002) (after determining that portions of the Governor's 2002 Redistricting Plan were unconstitutional, the Maryland Supreme Court prepared its own a redistricting plan with the aid of technical consultants).

Like the Superior Court in this case, some courts drawn into redistricting disputes have adopted a plan proposed by one of the partisan litigants. For example, in *Beauprez v. Avalos,* 42 P.3d 642 (Colo. 2002), after the legislature and governor failed to agree on a redistricting plan, a state court adopted a plan proposed by plaintiffs representing the interests of the State Democratic Party. That plan, however, was a modification of one originally proposed by the Republican leadership. *See id.* at 645–46. The Colorado Supreme Court affirmed, stating:

> We determine that the process utilized by the district court in adopting a redistricting plan was thorough, inclusive, and non-partisan. The district court engaged in an even-handed approach to the complex and detailed process of congressional redistricting. It encouraged all parties and intervenors to submit proposed plans in order for it to adopt a plan that would reflect, as much as possible, the input of the general assembly and the governor, while satisfying the relevant constitutional and non-constitutional criteria.

*Id.* at 647. *See also Vigo County Republican Cent. Comm. v. Vigo County Comm'rs,* 834 F.Supp. 1080 (S.D.Ind.1993) (adopting plan proposed by plaintiffs after finding significant deficiencies in plan approved by county commissioners); *Alexander v. Taylor,* 51 P.3d 1204 (Okla.2002) (affirming adoption of one of five plans submitted to the court).

The outcomes in these cases may well be supportable, and adoption of a plan provided by one of the parties has the advantage of avoiding the problems and pitfalls attendant to drafting a new plan. Nevertheless, we remain convinced that when faced with a politically polarized redistricting dispute like the one in this case, a court's adoption of a plan that represents one political party's idea of how district boundaries should be drawn does not conform to the principle of judicial independence and neutrality.

This is not to say that a court may never adopt a plan advocated by one of the parties in a proceeding under the Redistricting Statute. It is theoretically possible, for instance, that the Superior Court may be called on to decide a nonpolitical dispute over whether the district lines of a redistricting plan impermissibly cross precinct boundary lines. *See* I.C. § 36–3–4–3(a)(3). The court might find among the alternatives submitted a plan that has some measure of bipartisan support. It is also possible that a redistricting plan that has been duly adopted through the political process may be challenged by a disgruntled taxpayer or voter. *See* I.C. § 36–3–4–3(d). Disputes such as these may perhaps be resolved by a judgment that the plan at issue conforms to the requirements of the Redistricting Statute and other applicable law. *Cf. Prosser v. Elections Bd.,* 793 F.Supp. at 865 (if reviewing validly enacted plan, court's task would be to decide not whether the plan was the best

possible, but whether it struck a reasonable balance among applicable considerations). The case before this Court, however, is not such a dispute.

### The Remedy

Having concluded that the Superior Court's adoption of the Borst Plan cannot stand, we turn to the question of what to do next. If time were not of the essence and the administrative complexities of a 32–member court reaching a decision not so daunting,[5] we would remand this matter to the Superior Court with instructions to redraw the district boundaries, with the aid of a master if the court found it necessary, considering only the factors required by applicable federal and State law.

But time is of the essence. The primary election is scheduled for May 6, 2003, and the Marion County Election Board has told us that it must have district boundaries in place as soon as possible in order to conduct an orderly election on that date. Delaying the primary is an unattractive alternative for several reasons. Other races besides those for the Council are at stake in the primary election. This raises the prospect of either holding two primary elections or of prolonging the campaigns of all the other races. Also, primary election day is a State holiday, and rescheduling the primary would disrupt the schedules of many election day workers and volunteers. Given these time pressures, we find it appropriate and necessary to draw the district boundaries ourselves.

■ In a submission of supplemental authority filed with this case, Councillor Borst argues that this Court is without authority to draw legislative district boundaries. However, the General Assembly assigned the task of redrawing district boundaries to the judicial branch of

government in the event of political deadlock. *See* I.C. § 36–3–4–3(d). The Indiana Constitution grants this Court broad jurisdiction over judicial matters. "The Supreme Court shall exercise appellate jurisdiction under such terms and conditions as specified by rules . . . ." IND. CONST. art. 7, § 4. There is no question we have appellate jurisdiction over the case. · Having thus acquired jurisdiction, we can exercise that jurisdiction, as authorized by the Indiana Constitution, in accordance with court rules. The Rules of Appellate Procedure allow this Court to, among other things:

(2) reverse the decision of the trial court . . . ;

. . . .

(7) order correction of a judgment or order;

. . . .

(9) make any relief granted subject to conditions; and

(10) grant any other appropriate relief.

Ind. Appellate Rule 66(C).

Moreover, although the Court's appellate jurisdiction is now governed by Appellate Rule 4, we note that the legislature did explicitly envision review by this Court of any decision made by the Superior Court under the Redistricting Statute. *See* I.C. § 36–3–4–3(d). Given that explicit recognition by the legislature of a role for this Court in such matters and the broad jurisdiction invested in this Court by the Indiana Constitution and the Rules of Appellate Procedure, we conclude that it is within our authority to redraw the Council district lines in a politically neutral manner.

To that end, by order dated March 7, 2003, and pursuant to Appellate Rule 27,

---

5. We note that when the Unigov Act was first enacted, the Superior Court was composed of just seven judges. *See* Ind.Code Ann. § 4–2201 (Burns 1968 & Supp.1974).

we directed the parties to provide this Court with additional materials from the proceedings below. Included among those materials were exhibits better illustrating the various plans and database information used by the experts below to draw Council district lines in the various plan. To assure that the process be free of any hint of political partisanship, paragraph 2 of our order directed:

> e. The database shall not include individual or collective information about voting histories, political party affiliations, incumbency information, voting projections, or political data of that nature. This information is not relevant to the Court's review.

> . . . .

> g. The information requested is neutral in nature and not a matter about which any dispute between the parties has been identified, nor would such a dispute be expected. Accordingly, the Court fully anticipates that assembly of the requested data and the filing will be done cooperatively and jointly by the parties. The Court understands that there may be disagreement or objection to the outcomes the data has in the past or may in the future produce. However, there should be no dispute about the data itself or to the relevancy of the data requested. To the extent there is not accord as to relevancy of any particular data item, the parties should err on the side of inclusion rather than exclusion (except as to political party data excluded in paragraph 2(e), above). . . .

We commend the parties for their cooperation in this process. We note that although there is some disagreement on the exact boundaries of some precincts, the parties have agreed to the use of the set of data submitted by Councillor Borst for the purposes of this appeal.

In redrawing the district lines, we gave primary consideration to the following factors mandated by the Redistricting Statute: equality of population, compactness, and the prohibition against crossing precinct boundary lines. We also considered township lines, major rivers and thoroughfares, and school districts. These criteria were used as parameters for a leading computer program designed for redistricting. This program, in fact, was the same one used by both parties in this appeal. The program was used to draw a plan based solely on the identified criteria without consideration of party affiliation or incumbency. In fact, this Court had no data available on these political factors. A description by precinct of that plan is attached as Appendix A. A map reflecting the district boundaries is attached as Appendix B. Appendices A and B are hereby incorporated into this opinion by reference. In addition, maps of the Borst Plan and the Boyd Plan are attached as Appendices C and D, respectively.

The ideal population of each Council district is 34,418. The deviation from this ideal for most of the districts in the plan adopted by this Court is less than one percent, and none deviates by more than 1.8 percent. The attached Appendix E provides further statistical information about this plan. The districts are as compact as possible, given the goal of maximizing population equality and the mandate to respect precinct lines. In many instances, straight lines between districts were rendered impossible by the irregular and widely varied shapes and sizes of precincts. Nearly all of the irregular protrusions from one district into another resulted from irregularly shaped precincts. Just a very few irregularities were needed to maintain population balance. For example, the two protrusions from District 21 into District 17 were caused by precincts that straddled what otherwise would

have been a straight-line boundary. The small protrusion from District 17 into District 21 represents an irregularly shaped precinct included in District 17 to balance the populations. As a practical matter, rivers, thoroughfares, and school districts ended up playing a fairly minor role in the process because of the statutory requirement that precincts be used as the basic building blocks of districts and because we gave a higher priority to population equality and compactness.

Nothing in this opinion prevents the Council, subject to veto by Mayor Peterson, from redrawing these boundaries at any time under I.C. § 36–3–4–3(a). This provision is normally subject to the restriction that the Council may not change the boundary of a district established under the Redistricting Statute "after November 8 of the year preceding the year in which a municipal election is to be held and before the day following the date on which the municipal election is held except to assign territory to a municipal legislative body district in an annexation ordinance." *See* Ind.Code § 3–11–1.5–32 (1998). We do not read this restriction, however, to apply to ongoing efforts to effect a decennial redistricting required by the Redistricting Statute. We therefore conclude that the Council and the mayor are still free, even at this late date, to fashion a political solution to this dispute.

Time, however, is running out if the primary election is to be held on schedule. Therefore, the plan designed by this Court will be in effect for the primary election unless a different plan is adopted by ordinance prior to noon on March 26, 2003 (the deadline for response to any petition for rehearing).

## Conclusion

It is with great reluctance that we embark on resolving this politically-charged redistricting issue. We conclude, however, that when the Council and the mayor are unable to reach a suitable political solution, the Redistricting Statute calls on the judiciary to resolve the deadlock through a judicial decision, marked by the principles of independence and neutrality. The decision by the Marion Superior Court to adopt, by a close, party-line vote, a plan that has been uniformly supported by one major political party and uniformly opposed by the other, cannot be reconciled with both the appearance and fact of scrupulous judicial neutrality. Rather, a judicial decision calls for the adoption of a plan that considers only politically neutral factors required by federal and State constitutions and statutes.

If we remanded this case, we have no reason to doubt the Superior Court's ability and willingness to follow our guidance on this issue of first impression in this State. However, due to severe time constraints involved, we have chosen instead to adopt a plan consistent with the principles we have set forth, subject to redrawing through an appropriate legislative process.

The Court's plan was drawn with strict neutrality, without consideration of party affiliation or incumbency. The Court imposed neither the Borst Plan proposed by the Republican majority of the Council, *see* Appendix C, nor the Boyd Plan proposed by the Democratic minority, *see* Appendix D.

For the reasons above, the judgment of the Marion Superior Court is reversed. The redistricting plan attached to and incorporated by reference into this opinion will govern the district boundaries of the Council unless and until a different plan is enacted.

Because time is of the essence, the Court, by separate order, has set shortened deadlines to govern rehearing under

Appellate Rule 54. In addition, the Court now establishes the close of business on March 31, 2003, as the deadline for any person to declare his or her candidacy for any position on the Council. Because prior candidacy declarations were made without regard to districts, persons making such declarations must still designate whether he or she is running for an at-large position, and if not, the district for which he or she is running. The deadline for such designations shall also be the close of business on March 31, 2003.

SHEPARD, C.J., and DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

### Appendix A: List of Precincts in Each City–County District

**DISTRICT 1:**

Pike Precinct 1
Pike Precinct 2
Pike Precinct 4
Pike Precinct 5
Pike Precinct 6
Pike Precinct 8
Pike Precinct 9
Pike Precinct 12
Pike Precinct 14
Pike Precinct 15
Pike Precinct 18
Pike Precinct 19
Pike Precinct 21
Pike Precinct 22
Pike Precinct 26
Pike Precinct 27
Pike Precinct 28
Pike Precinct 29
Pike Precinct 34
Pike Precinct 36
Pike Precinct 37
Pike Precinct 38
Pike Precinct 39
Pike Precinct 40
Pike Precinct 41
Pike Precinct 44
Pike Precinct 52
Pike Precinct 54
Pike Precinct 55
Pike Precinct 56
Pike Precinct 59
Pike Precinct 60

**DISTRICT 2:**

Pike Precinct 13
Pike Precinct 20
Pike Precinct 35
Pike Precinct 48
Pike Precinct 53
Washington Precinct 13
Washington Precinct 22
Washington Precinct 25
Washington Precinct 30
Washington Precinct 33
Washington Precinct 34
Washington Precinct 37
Washington Precinct 38
Washington Precinct 46
Washington Precinct 47
Washington Precinct 48
Washington Precinct 49
Washington Precinct 53
Washington Precinct 60
Washington Precinct 61
Washington Precinct 62
Washington Precinct 63
Washington Precinct 67
Washington Precinct 68
Washington Precinct 69
Washington Precinct 72
Washington Precinct 73
Washington Precinct 74
Washington Precinct 80

Washington Precinct 84
Washington Precinct 85
Washington Precinct 91
Washington Precinct 92
Washington Precinct 93
Washington Precinct 96
Washington Precinct 104
Washington Precinct 105
Washington Precinct 106
Washington Precinct 107
Washington Precinct 109
Washington Precinct 110
Washington Precinct 112

**DISTRICT 3:**

Ward 21 Precinct 1
Ward 21 Precinct 2
Ward 21 Precinct 3
Ward 21 Precinct 4
Ward 21 Precinct 5
Ward 21 Precinct 6
Ward 21 Precinct 7
Ward 21 Precinct 9
Ward 21 Precinct 10
Ward 21 Precinct 11
Ward 21 Precinct 12
Ward 21 Precinct 13
Ward 21 Precinct 14
Ward 21 Precinct 15
Ward 21 Precinct 16
Ward 21 Precinct 17
Ward 21 Precinct 18
Ward 21 Precinct 19
Ward 21 Precinct 20
Ward 21 Precinct 21
Ward 21 Precinct 23
Ward 21 Precinct 24
Ward 22 Precinct 3
Ward 22 Precinct 9

Ward 22 Precinct 10
Washington Precinct 2
Washington Precinct 7
Washington Precinct 10
Washington Precinct 12
Washington Precinct 26
Washington Precinct 27
Washington Precinct 29
Washington Precinct 31
Washington Precinct 43
Washington Precinct 54
Washington Precinct 59
Washington Precinct 64
Washington Precinct 65
Washington Precinct 66
Washington Precinct 79
Washington Precinct 87
Washington Precinct 88
Washington Precinct 89
Washington Precinct 98
Washington Precinct 102
Washington Precinct 103
Washington Precinct 113
Washington Precinct 114

**DISTRICT 4:**

Ward 21 Precinct 22
Ward 31 Precinct 2
Ward 31 Precinct 3
Ward 31 Precinct 4
Ward 31 Precinct 5
Ward 31 Precinct 6
Ward 31 Precinct 7
Ward 31 Precinct 8
Ward 31 Precinct 10
Washington Precinct 1
Washington Precinct 3
Washington Precinct 5
Washington Precinct 6
Washington Precinct 9
Washington Precinct 11

Washington Precinct 15
Washington Precinct 16
Washington Precinct 17
Washington Precinct 18
Washington Precinct 21
Washington Precinct 28
Washington Precinct 32
Washington Precinct 35
Washington Precinct 39
Washington Precinct 40
Washington Precinct 41
Washington Precinct 42
Washington Precinct 44
Washington Precinct 45
Washington Precinct 52
Washington Precinct 55
Washington Precinct 56
Washington Precinct 57
Washington Precinct 58
Washington Precinct 70
Washington Precinct 75
Washington Precinct 76
Washington Precinct 77
Washington Precinct 78
Washington Precinct 81
Washington Precinct 86
Washington Precinct 90
Washington Precinct 94
Washington Precinct 97
Washington Precinct 101
Washington Precinct 111

**DISTRICT 5:**

Lawrence Precinct 16
Lawrence Precinct 17
Lawrence Precinct 27
Lawrence Precinct 28
Lawrence Precinct 32
Lawrence Precinct 35

Lawrence Precinct 38
Lawrence Precinct 43
Lawrence Precinct 44
Lawrence Precinct 45
Lawrence Precinct 46
Lawrence Precinct 47
Lawrence Precinct 48
Lawrence Precinct 52
Lawrence Precinct 53
Lawrence Precinct 58
Lawrence Precinct 59
Lawrence Precinct 64
Lawrence Precinct 65
Lawrence Precinct 68
Lawrence Precinct 70
Lawrence Precinct 71
Lawrence Precinct 72
Lawrence Precinct 73
Lawrence Precinct 74
Lawrence Precinct 76
Lawrence Precinct 77
Lawrence Precinct 78
Lawrence Precinct 79
Lawrence Precinct 80
Lawrence Precinct 81
Lawrence Precinct 82
Lawrence Precinct 84
Lawrence Precinct 85
Lawrence Precinct 86
Lawrence Precinct 87
Lawrence Precinct 88
Lawrence Precinct 90
Geist Reservoir (Non–Voting)

**DISTRICT 6:**

Ward 29 Precinct 13
Ward 29 Precinct 28
Center Ward 32 Precinct 1
Eagle Creek Reservoir (Non–Voting)
Pike Precinct 3
Pike Precinct 23

Pike Precinct 30
Pike Precinct 31
Pike Precinct 32
Pike Precinct 33
Pike Precinct 43
Pike Precinct 45
Pike Precinct 46
Pike Precinct 49
Pike Precinct 51
Pike Precinct 57
Wayne Precinct 3
Wayne Precinct 22
Wayne Precinct 34
Wayne Precinct 37
Wayne Precinct 38
Wayne Precinct 45
Wayne Precinct 59
Wayne Precinct 70
Wayne Precinct 71
Wayne Precinct 77
Wayne Precinct 82
Wayne Precinct 83
Wayne Precinct 84
Wayne Precinct 85
Wayne Precinct 88

*DISTRICT 7:*

Ward 29 Precinct 6
Ward 29 Precinct 7
Ward 29 Precinct 9
Ward 29 Precinct 10
Ward 29 Precinct 11
Ward 29 Precinct 12
Ward 29 Precinct 14
Ward 29 Precinct 19
Ward 29 Precinct 20
Ward 29 Precinct 21
Ward 29 Precinct 22
Ward 29 Precinct 24

Ward 29 Precinct 25
Ward 29 Precinct 30
Ward 29 Precinct 31
Ward 29 Precinct 33
Ward 32 Precinct 2
Center Ward 32 Precinct 3
Center Ward 32 Precinct 4
Pike Precinct 7
Pike Precinct 10
Pike Precinct 11
Pike Precinct 16
Pike Precinct 17
Pike Precinct 24
Pike Precinct 25
Pike Precinct 42
Pike Precinct 47
Pike Precinct 50
Pike Precinct 58
Wayne Precinct 28
Wayne Precinct 39
Wayne Precinct 47
Wayne Precinct 61

*DISTRICT 8:*

Center Ward 5 Precinct 2
Center Ward 5 Precinct 3
Center Ward 5 Precinct 4
Center Ward 5 Precinct 5
Center Ward 5 Precinct 9
Center Ward 5 Precinct 10
Center Ward 5 Precinct 11
Center Ward 6 Precinct 1
Center Ward 6 Precinct 3
Center Ward 6 Precinct 10
Ward 20 Precinct 1
Ward 20 Precinct 2
Ward 20 Precinct 3
Ward 20 Precinct 5
Ward 20 Precinct 6
Ward 20 Precinct 7
Ward 20 Precinct 8

Ward 20 Precinct 10
Ward 20 Precinct 11
Ward 20 Precinct 12
Ward 20 Precinct 13
Ward 20 Precinct 15
Ward 20 Precinct 16
Ward 20 Precinct 17
Ward 20 Precinct 18
Ward 20 Precinct 19
Ward 21 Precinct 8
Ward 29 Precinct 16
Ward 29 Precinct 23
Ward 29 Precinct 29
Washington Precinct 4
Washington Precinct 8
Washington Precinct 14
Washington Precinct 19
Washington Precinct 20
Washington Precinct 23
Washington Precinct 24
Washington Precinct 36
Washington Precinct 50
Washington Precinct 51
Washington Precinct 71
Washington Precinct 82
Washington Precinct 83
Washington Precinct 108

*DISTRICT 9:*

Center Ward 3 Precinct 1
Center Ward 3 Precinct 2
Center Ward 3 Precinct 3
Center Ward 3 Precinct 4
Center Ward 3 Precinct 5
Center Ward 3 Precinct 6
Center Ward 3 Precinct 7
Center Ward 3 Precinct 8
Center Ward 4 Precinct 1
Center Ward 4 Precinct 2

Center Ward 4 Precinct 3
Center Ward 4 Precinct 4
Center Ward 4 Precinct 5
Center Ward 4 Precinct 6
Center Ward 4 Precinct 7
Center Ward 4 Precinct 9
Center Ward 4 Precinct 10
Center Ward 8 Precinct 2
Center Ward 8 Precinct 4
Center Ward 8 Precinct 5
Center Ward 11 Precinct 2
Ward 20 Precinct 4
Ward 20 Precinct 9
Ward 20 Precinct 14
Ward 22 Precinct 1
Ward 22 Precinct 2
Ward 22 Precinct 4
Ward 22 Precinct 5
Ward 22 Precinct 6
Ward 22 Precinct 7
Ward 22 Precinct 8
Ward 22 Precinct 11
Ward 22 Precinct 12
Ward 22 Precinct 13
Ward 22 Precinct 14
Center Ward 23 Precinct 1
Center Ward 23 Precinct 3
Center Ward 23 Precinct 4
Center Ward 23 Precinct 5
Center Ward 23 Precinct 6
Center Ward 23 Precinct 8
Center Ward 23 Precinct 9
Center Ward 23 Precinct 10
Center Ward 23 Precinct 11
Center Ward 23 Precinct 12
Center Ward 23 Precinct 13
Ward 31 Precinct 1

*DISTRICT 10:*

Center Ward 1 Precinct 1
Center Ward 1 Precinct 2

Center Ward 1 Precinct 3

Center Ward 1 Precinct 4

Center Ward 1 Precinct 5

Center Ward 1 Precinct 6

Center Ward 1 Precinct 7

Center Ward 1 Precinct 9

Center Ward 1 Precinct 10

Center Ward 1 Precinct 12

Center Ward 1 Precinct 13

Center Ward 1 Precinct 14

Center Ward 1 Precinct 15

Center Ward 1 Precinct 16

Center Ward 1 Precinct 17

Center Ward 2 Precinct 2

Center Ward 2 Precinct 3

Center Ward 2 Precinct 4

Center Ward 2 Precinct 7

Center Ward 2 Precinct 8

Center Ward 2 Precinct 9

Center Ward 2 Precinct 10

Center Ward 2 Precinct 11

Center Ward 9 Precinct 1

Center Ward 9 Precinct 2

Center Ward 9 Precinct 3

Center Ward 9 Precinct 5

Center Ward 9 Precinct 6

Center Ward 9 Precinct 7

Center Ward 9 Precinct 9

Center Ward 9 Precinct 10

Center Ward 9 Precinct 11

Center Ward 9 Precinct 12

Center Ward 9 Precinct 14

Center Ward 9 Precinct 15

Center Ward 9 Precinct 16

Center Ward 10 Precinct 4

Center Ward 23 Precinct 2

Center Ward 23 Precinct 7

Center Ward 25 Precinct 7

### DISTRICT 11:

Ward 27 Precinct 1

Ward 27 Precinct 2

Ward 27 Precinct 3

Ward 27 Precinct 4

Ward 27 Precinct 5

Ward 27 Precinct 6

Ward 27 Precinct 7

Ward 27 Precinct 9

Ward 27 Precinct 10

Ward 27 Precinct 11

Ward 27 Precinct 12

Ward 27 Precinct 17

Ward 27 Precinct 22

Ward 27 Precinct 25

Ward 27 Precinct 26

Ward 27 Precinct 28

Ward 27 Precinct 29

Ward 27 Precinct 30

Lawrence Precinct 2

Lawrence Precinct 3

Lawrence Precinct 4

Lawrence Precinct 5

Lawrence Precinct 7

Lawrence Precinct 9

Lawrence Precinct 10

Lawrence Precinct 11

Lawrence Precinct 14

Lawrence Precinct 15

Lawrence Precinct 18

Lawrence Precinct 19

Lawrence Precinct 21

Lawrence Precinct 24

Lawrence Precinct 26

Lawrence Precinct 31

Lawrence Precinct 33

Lawrence Precinct 37

Lawrence Precinct 39

Lawrence Precinct 40

Lawrence Precinct 41
Lawrence Precinct 49
Lawrence Precinct 62
Lawrence Precinct 63
Lawrence Precinct 75
Lawrence Precinct 83
Lawrence Precinct 91

**DISTRICT 12:**

Ward 27 Precinct 8
Ward 27 Precinct 13
Ward 27 Precinct 16
Ward 27 Precinct 20
Ward 27 Precinct 24
Lawrence Precinct 1
Lawrence Precinct 6
Lawrence Precinct 8
Lawrence Precinct 12
Lawrence Precinct 13
Lawrence Precinct 20
Lawrence Precinct 22
Lawrence Precinct 23
Lawrence Precinct 25
Lawrence Precinct 29
Lawrence Precinct 30
Lawrence Precinct 34
Lawrence Precinct 36
Lawrence Precinct 50
Lawrence Precinct 51
Lawrence Precinct 54
Lawrence Precinct 55
Lawrence Precinct 56
Lawrence Precinct 57
Lawrence Precinct 60
Lawrence Precinct 66
Lawrence Precinct 67
Lawrence Precinct 89

**DISTRICT 13:**

Wayne Precinct 4

Wayne Precinct 9
Wayne Precinct 10
Wayne Precinct 11
Wayne Precinct 12
Wayne Precinct 19
Wayne Precinct 21
Wayne Precinct 23
Wayne Precinct 29
Wayne Precinct 33
Wayne Precinct 35
Wayne Precinct 36
Wayne Precinct 43
Wayne Precinct 44
Wayne Precinct 49
Wayne Precinct 52
Wayne Precinct 53
Wayne Precinct 54
Wayne Precinct 56
Wayne Precinct 57
Wayne Precinct 62
Wayne Precinct 63
Wayne Precinct 64
Wayne Precinct 65
Wayne Precinct 67
Wayne Precinct 69
Wayne Precinct 73
Wayne Precinct 74
Wayne Precinct 76
Wayne Precinct 79
Wayne Precinct 81
Wayne Precinct 86
Wayne Precinct 87

**DISTRICT 14:**

Ward 19 Precinct 1
Ward 19 Precinct 4
Ward 19 Precinct 5
Ward 19 Precinct 6
Ward 19 Precinct 7
Ward 19 Precinct 8
Ward 19 Precinct 9

Ward 19 Precinct 10
Ward 24 Precinct 1
Ward 29 Precinct 5
Ward 29 Precinct 8
Ward 29 Precinct 15
Ward 29 Precinct 26
Wayne Precinct 1
Wayne Precinct 2
Wayne Precinct 5
Wayne Precinct 7
Wayne Precinct 8
Wayne Precinct 13
Wayne Precinct 17
Wayne Precinct 18
Wayne Precinct 25
Wayne Precinct 26
Wayne Precinct 27
Wayne Precinct 31
Wayne Precinct 32
Wayne Precinct 40
Wayne Precinct 46
Wayne Precinct 48
Wayne Precinct 50
Wayne Precinct 51
Wayne Precinct 55
Wayne Precinct 60
Wayne Precinct 66
Wayne Precinct 72
Wayne Precinct 80

**DISTRICT 15:**

Center Ward 4 Precinct 8
Center Ward 5 Precinct 1
Center Ward 5 Precinct 6
Center Ward 5 Precinct 7
Center Ward 5 Precinct 8
Center Ward 5 Precinct 12
Center Ward 6 Precinct 2
Center Ward 6 Precinct 4

Center Ward 6 Precinct 5
Center Ward 6 Precinct 6
Center Ward 6 Precinct 7
Center Ward 6 Precinct 8
Center Ward 6 Precinct 9
Center Ward 6 Precinct 11
Center Ward 7 Precinct 1
Center Ward 7 Precinct 2
Center Ward 7 Precinct 3
Ward 7 Precinct 4
Center Ward 7 Precinct 6
Center Ward 8 Precinct 1
Center Ward 8 Precinct 3
Center Ward 11 Precinct 1
Center Ward 11 Precinct 3
Center Ward 11 Precinct 4
Center Ward 11 Precinct 5
Center Ward 12 Precinct 1
Center Ward 12 Precinct 2
Center Ward 12 Precinct 3
Center Ward 12 Precinct 4
Center Ward 12 Precinct 5
Ward 19 Precinct 2
Ward 19 Precinct 3
Ward 19 Precinct 11
Ward 19 Precinct 12
Ward 24 Precinct 2
Ward 24 Precinct 3
Ward 29 Precinct 1
Ward 29 Precinct 2
Ward 29 Precinct 3
Ward 29 Precinct 4
Ward 29 Precinct 17
Ward 29 Precinct 27

**DISTRICT 16:**

Center Ward 2 Precinct 1
Center Ward 10 Precinct 1
Center Ward 10 Precinct 2
Center Ward 10 Precinct 3
Center Ward 10 Precinct 5

Center Ward 10 Precinct 6
Center Ward 10 Precinct 7
Center Ward 10 Precinct 8
Center Ward 10 Precinct 9
Center Ward 10 Precinct 10
Center Ward 16 Precinct 1
Center Ward 16 Precinct 2
Center Ward 16 Precinct 3
Center Ward 16 Precinct 4
Center Ward 16 Precinct 5
Center Ward 16 Precinct 6
Center Ward 16 Precinct 7
Center Ward 16 Precinct 8
Center Ward 16 Precinct 10
Center Ward 16 Precinct 11
Center Ward 17 Precinct 1
Center Ward 17 Precinct 7
Center Ward 17 Precinct 9
Center Ward 25 Precinct 1
Center Ward 25 Precinct 2
Center Ward 25 Precinct 6
Center Ward 25 Precinct 8
Center Ward 25 Precinct 9
Center Ward 25 Precinct 10
Center Ward 25 Precinct 13
Center Ward 25 Precinct 14

*DISTRICT 17:*

Ward 18 Precinct 7
Ward 28 Precinct 1
Ward 28 Precinct 2
Ward 28 Precinct 3
Ward 28 Precinct 4
Ward 28 Precinct 5
Ward 28 Precinct 6
Ward 28 Precinct 7
Ward 28 Precinct 8
Ward 28 Precinct 9
Ward 28 Precinct 10

Ward 28 Precinct 11
Ward 28 Precinct 12
Ward 28 Precinct 13
Ward 28 Precinct 14
Ward 28 Precinct 15
Ward 28 Precinct 17
Ward 28 Precinct 19
Ward 28 Precinct 20
Ward 28 Precinct 21
Ward 28 Precinct 22
Ward 28 Precinct 23
Ward 28 Precinct 24
Ward 28 Precinct 25
Ward 28 Precinct 28
Ward 28 Precinct 30
Warren Precinct 2
Warren Precinct 7
Warren Precinct 11
Warren Precinct 14
Warren Precinct 15
Warren Precinct 18
Warren Precinct 23
Warren Precinct 33
Warren Precinct 36
Warren Precinct 37
Warren Precinct 38
Warren Precinct 51
Warren Precinct 54
Warren Precinct 56
Warren Precinct 57

*DISTRICT 18:*

Ward 27 Precinct 14
Ward 27 Precinct 15
Ward 27 Precinct 18
Ward 27 Precinct 19
Ward 27 Precinct 21
Ward 27 Precinct 23
Ward 28 Precinct 18
Ward 28 Precinct 26
Ward 28 Precinct 27

Ward 28 Precinct 29
Lawrence Precinct 42
Warren Precinct 9
Warren Precinct 17
Warren Precinct 20
Warren Precinct 21
Warren Precinct 24
Warren Precinct 34
Warren Precinct 35
Warren Precinct 39
Warren Precinct 41.
Warren Precinct 42
Warren Precinct 43.
Warren Precinct 47
Warren Precinct 48
Warren Precinct 49
Warren Precinct 50·
Warren Precinct 59

### DISTRICT 19:

Center Ward 13 Precinct 1
Center Ward 13 Precinct 2
Center Ward 13 Precinct 4
Center Ward 13 Precinct 5
Center Ward 13 Precinct 6
Center Ward 13 Precinct 7
Center Ward 13 Precinct 8
Center Ward 13 Precinct 9
Center Ward 13 Precinct 10
Center Ward 13 Precinct 11
Center Ward 13 Precinct 12
Center Ward 13 Precinct 13
Center Ward 14 Precinct 2
Center Ward 14 Precinct 4
Center Ward 14 Precinct 5
Center Ward 14 Precinct 6
Center Ward 15 Precinct 1
Center Ward 15 Precinct 2
Center Ward 15 Precinct 3·

Center Ward 17 Precinct 4
Center Ward 17 Precinct 10
Ward 24 Precinct 4
Ward 24 Precinct 5
Ward 24 Precinct 6
Ward 24 Precinct 7
Center Ward 30 Precinct 7
Center Ward 30 Precinct 8
Center Ward 30 Precinct 11
Wayne Precinct 6
Wayne Precinct 14
Wayne Precinct 15
Wayne Precinct 16
Wayne Precinct 24
Wayne Precinct 30

### DISTRICT 20:

Center Ward 17 Precinct 2
Center Ward 17 Precinct 3
Center Ward 17 Precinct 5
Center Ward 17 Precinct 6
Center Ward 17 Precinct 8
Center Ward 17 Precinct 11
Ward 26 Precinct 4
Center Ward 26 Precinct 8
Center Ward 30 Precinct 1
Center Ward 30 Precinct 2
Center Ward 30 Precinct 3
Center Ward 30 Precinct 4
Center Ward 30 Precinct 5
Center Ward 30 Precinct 6
Center Ward 30 Precinct 9
Center Ward 30 Precinct 10
Center Ward 30 Precinct 12
Center Outside Precinct 1
Center Outside Precinct 2
Center Outside Precinct 3
Center Outside Precinct 4
Perry Precinct 1
Perry Precinct 2
Perry Precinct 3

Perry Precinct 12
Perry Precinct 16
Perry Precinct 23
Perry Precinct 24
Perry Precinct 32
Perry Precinct 42
Perry Precinct 50
Perry Precinct 53
Perry Precinct 61
Perry Precinct 63
Perry Precinct 72
Perry Precinct 73
Perry Precinct 82
Perry Precinct 85

**DISTRICT 21:**

Ward 18 Precinct 1
Ward 18 Precinct 2
Ward 18 Precinct 3
Ward 18 precinct 4
Ward 18 Precinct 5
Ward 18 Precinct 6
Ward 18 Precinct 8
Ward 18 Precinct 9
Ward 18 Precinct 10
Ward 18 Precinct 11
Ward 18 Precinct 12
Ward 18 Precinct 13
Ward 18 precinct 14
Ward 18 Precinct 15
Center Ward 25 Precinct 3
Center Ward 25 Precinct 4
Center Ward 25 Precinct 11
Center Ward 25 Precinct 12
Warren Precinct 1
Warren Precinct 3
Warren Precinct 4
Warren Precinct 5
Warren Precinct 6

Warren Precinct 8
Warren Precinct 10
Warren Precinct 12
Warren Precinct 19
Warren Precinct 22
Warren Precinct 25
Warren Precinct 26
Warren Precinct 27
Warren Precinct 29
Warren Precinct 30
Warren Precinct 31
Warren Precinct 32
Warren Precinct 45
Warren Precinct 55

**DISTRICT 22:**

Decatur Precinct 1
Decatur Precinct 2
Decatur Precinct 3
Decatur Precinct 4
Decatur Precinct 5
Decatur Precinct 6
Decatur Precinct 7
Decatur Precinct 8
Decatur Precinct 9
Decatur Precinct 10
Decatur Precinct 11
Decatur Precinct 12
Decatur Precinct 13
Decatur Precinct 14
Decatur Precinct 15
Decatur Precinct 16
Decatur Precinct 17
Decatur Precinct 18
Decatur Precinct 19
Decatur Precinct 20
Perry Precinct 6
Perry Precinct 29
Perry Precinct 65
Perry Precinct 69
Perry Precinct 78

Wayne Precinct 20
Wayne Precinct 41
Wayne Precinct 68

### DISTRICT 23:

Ward 26 Precinct 1
Center Ward 26 Precinct 2
Center Ward 26 Precinct 3
Center Ward 26 Precinct 5
Center Ward 26 Precinct 6
Center Ward 26 Precinct 7
Perry Precinct 4
Perry Precinct 5
Perry Precinct 7
Perry Precinct 13
Perry Precinct 14
Perry Precinct 15
Perry Precinct 22
Perry Precinct 27
Perry Precinct 28
Perry Precinct 30
Perry Precinct 33
Perry Precinct 34
Perry Precinct 35
Perry Precinct 36
Perry Precinct 43
Perry Precinct 44
Perry Precinct 47
Perry Precinct 48
Perry Precinct 56
Perry Precinct 57
Perry Precinct 58
Perry Precinct 64
Perry Precinct 68
Perry Precinct 75
Perry Precinct 76
Perry Precinct 79
Perry Precinct 80
Perry Precinct 84

Perry Precinct 86

### DISTRICT 24:

Perry Precinct 8
Perry Precinct 9
Perry Precinct 10
Perry Precinct 11
Perry Precinct 17
Perry Precinct 18
Perry Precinct 19
Perry Precinct 20
Perry Precinct 21
Perry Precinct 25
Perry Precinct 26
Perry Precinct 31
Perry Precinct 37
Perry Precinct 38
Perry Precinct 39
Perry Precinct 40
Perry Precinct 41
Perry Precinct 45
Perry Precinct 46
Perry Precinct 49
Perry Precinct 51
Perry Precinct 52
Perry Precinct 54
Perry Precinct 55
Perry Precinct 59
Perry Precinct 62
Perry Precinct 66
Perry Precinct 67
Perry Precinct 70
Perry Precinct 71
Perry Precinct 74
Perry Precinct 77
Perry Precinct 83

### DISTRICT 25:

Franklin Precinct 1
Franklin Precinct 2
Franklin Precinct 3
Franklin Precinct 4

Franklin Precinct 5
Franklin Precinct 6
Franklin Precinct 7
Franklin Precinct 8
Franklin Precinct 9
Franklin Precinct 10
Franklin Precinct 11
Franklin Precinct 12
Franklin Precinct 13
Franklin Precinct 14
Franklin Precinct 15
Franklin Precinct 16

Franklin Precinct 17
Franklin Precinct 18
Franklin Precinct 19
Franklin Precinct 20
Franklin Precinct 21
Franklin Precinct 22
Franklin Precinct 23
Franklin Precinct 24
Franklin Precinct 25
Franklin Precinct 26
Warren Precinct 13
Warren Precinct 28

Appendix B: City-County Districts

Appendix C: Borst Plan

Appendix D: Boyd Plan

Appendix E: Districts Summary

| DISTRICT | TAPERSONS | Targ. | Dev. | Pop Dev. | TABLACK | PCTBLK | TNHISPANIC | PCTHIS | TAAMERIND | TAASIAN | TAHAWPAC | TA1OTHER |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | 34618 | 34418 | 0.6% | 200 | 8908 | 25.7% | 1401 | 4.0% | 55 | 1468 | 6 | 751 |
| 02 | 34855 | 34418 | 1.3% | 437 | 10580 | 30.4% | 2286 | 6.5% | 66 | 767 | 17 | 1123 |
| 03 | 34061 | 34418 | -1.0% | -357 | 1769 | 5.2% | 729 | 2.1% | 55 | 452 | 10 | 350 |
| 04 | 34925 | 34418 | 1.5% | 507 | 9356 | 26.8% | 882 | 2.5% | 40 | 598 | 19 | 412 |
| 05 | 34319 | 34418 | -0.3% | -99 | 3049 | 8.9% | 978 | 2.8% | 62 | 868 | 22 | 471 |
| 06 | 34252 | 34418 | -0.5% | -166 | 6945 | 20.3% | 2508 | 7.3% | 78 | 1013 | 21 | 1341 |
| 07 | 34697 | 34418 | 0.8% | 279 | 13815 | 39.8% | 2967 | 8.6% | 94 | 943 | 21 | 1988 |
| 08 | 34043 | 34418 | -1.1% | -375 | 16742 | 49.2% | 465 | 1.4% | 54 | 297 | 4 | 232 |
| 09 | 33996 | 34418 | -1.2% | -422 | 25871 | 76.1% | 529 | 1.6% | 74 | 124 | 6 | 233 |
| 10 | 34529 | 34418 | 0.3% | 111 | 17309 | 50.1% | 1390 | 4.0% | 118 | 76 | 11 | 834 |
| 11 | 34549 | 34418 | 0.4% | 131 | 15941 | 46.1% | 773 | 2.2% | 74 | 411 | 17 | 428 |
| 12 | 35045 | 34418 | 1.8% | 627 | 7967 | 22.7% | 1594 | 4.5% | 98 | 639 | 27 | 550 |
| 13 | 34426 | 34418 | 0.0% | 8 | 2667 | 7.7% | 905 | 2.6% | 91 | 539 | 14 | 460 |
| 14 | 33892 | 34418 | -1.5% | -526 | 6426 | 19.0% | 1784 | 5.3% | 145 | 522 | 81 | 913 |
| 15 | 34454 | 34418 | 0.1% | 36 | 21136 | 61.3% | 1345 | 3.9% | 98 | 718 | 24 | 639 |
| 16 | 34125 | 34418 | -0.9% | -293 | 5583 | 16.4% | 3659 | 10.7% | 206 | 100 | 14 | 2052 |
| 17 | 34356 | 34418 | -0.2% | -62 | 10022 | 29.2% | 814 | 2.4% | 85 | 277 | 7 | 425 |
| 18 | 34816 | 34418 | 1.2% | 398 | 14334 | 41.2% | 1365 | 3.9% | 94 | 484 | 27 | 736 |
| 19 | 34590 | 34418 | 0.5% | 172 | 3177 | 9.0% | 2084 | 6.0% | 113 | 77 | 10 | 856 |
| 20 | 34850 | 34418 | 1.3% | 432 | 2646 | 7.6% | 1114 | 3.2% | 105 | 226 | 17 | 547 |
| 21 | 34040 | 34418 | -1.1% | -378 | 1845 | 5.4% | 817 | 2.4% | 113 | 314 | 17 | 325 |
| 22 | 34513 | 34418 | 0.3% | 95 | 401 | 1.2% | 659 | 1.9% | 83 | 184 | 11 | 297 |
| 23 | 34444 | 34418 | 0.1% | 26 | 924 | 2.7% | 1082 | 3.1% | 64 | 412 | 10 | 452 |
| 24 | 34173 | 34418 | -0.7% | -245 | 365 | 1.1% | 777 | 2.3% | 50 | 364 | 2 | 345 |
| 25 | 33886 | 34418 | -1.5% | -532 | 246 | 0.7% | 417 | 1.2% | 60 | 463 | 23 | 124 |
| Unassigned | 0 | | | 0 | 0 | | 0 | | 0 | 0 | 0 | 0 |