BOEHM, Justice,
concurring in result.
Article 8, section 1 of the Indiana Constitution provides that it is the duty of the General Assembly to "provide, by law, for a general and uniform system of Common Schools."
I agree with Justice Rucker that this provision creates judicially enforceable standards. Courts are fully capable of determining whether a law is applied generally throughout the state. Similarly, whether a system is "uniform" is capable of judicial resolution. More generally, a requirement that a "system" be "general" and "uniform" is a standard that courts routinely address and find to be met or not. See, e.g., Mun. City of South Bend v. Kimsey, 781 N.E.2d 683 (Ind.2003) (annexation statute applicable to only one county violated state constitution provision that laws shall be "general" and of "uniform" operation, Ind. Const. art. 4, § 283). It is no less enforceable than the Equal Protection Clause of the United States Constitution or the Equal Privileges Clause of the Indiana Constitution.
I agree with the majority, however, that the Indiana Constitution imposes no particular level of quality on the educational product of our schools. To be sure, the requirement to provide for a "general and uniform system of Common schools" requires that there be legislation providing educational opportunity for all Indiana children. But the plaintiffs understandably do not contend that the system we have is so bereft of educational value that it is not a "system of Common Schools" at all. And for whatever reason, the plaintiffs in this case have not chosen to assert that the system the General Assembly has provided by law is not general or lacks uniformity. Rather, they assert that the current system of public education from kindergarten through high school fails to provide a quality of education adequate to the needs of our children. This is not a claim that lends itself to resolution in a judicial forum. Surely any of a vast number of methods of funding and executing a system of public schools might be deemed adequate, but each raises a virtually endless list of conflicting considerations and policy choices on subjects ranging from funding options to educational theory. There are no readily identifiable standards to determine adequacy vel non of our system and the process of adjudication does not lend itself to resolution of the myriad balancing acts required to evaluate its adequacy. In my view, the claim that our present system is inadequate is simply too amorphous for judicial resolution.
In sum, I believe that article 8, section 1 of the Indiana Constitution is of the same general structure as the Equal Protection Clause of the Fourteenth Amendment and the Equal Privileges Clause of the Indiana Constitution. - These provisions require that the General Assembly treat citizens evenhandedly, and prohibit some forms of arbitrary or discriminatory - legislation. But in general they do not dictate the substance of any program, or require how it is to be carried out, so long as any disparate treatment is reasonably related *524 to legitimate legislative goals. I therefore concur in the majority's holding that article 8, section 1 of the Indiana Constitution "does not mandate any judicially enforceable standard of quality" of the education to be provided by that system. For that reason I agree that this complaint was properly dismissed.
I believe there is a second problem with this complaint. The plaintiffs have chosen to sue the Governor and the Superintendent of Public Instruction. It is appropriate to sue executive officers to enjoin them from enforcing an unconstitutional statute. See, e.g., Clinic for Women, Inc. v. Brizzi, 837 N.E.2d 973 (Ind.2005) (action against prosecutor to enjoin enforcement of statute alleged to violate state constitution); Bayh v. Ind. State Bldg. & Constr. Trades Council, 674 N.E.2d 176 (Ind.1996) (action against governor and others to enjoin enforcement of statute alleged to violate state constitution). But the plaintiffs here do not seek to enjoin the state's funding of the current system. Rather, they seek affirmative relief in the form of a mandate to implement a system of public education that meets their standards. That is more than these defendants can deliver, even if they admitted the allegations of the complaint and agreed to a consent judgment. The General Assembly must first act to create a system, which can then be tested for conformity to the constitution.
In some circumstances, courts can properly go beyond simply enjoining the executive branch from proceeding under an unconstitutional statute and may also order equitable relief that, in effect, amounts to initiating a measure that is properly in the hands of the legislature. An example is redistricting of legislative districts where the legislative process has failed to act altogether, or the legislative product fails to meet a constitutionally mandated and judicially manageable standard such as relatively equal population. See, eg., Prosser v. Elections Bd., 793 F.Supp. 859, 870-71 (W.D.Wis.1992); Peterson v. Borst, 786 N.E.2d 668, 676 (Ind.2003). But those instances are few and far between, and should be restricted to instances where the legislative process has failed to address a constitutionally mandated subject, or failed to remedy a declared defect, or where the need for immediate correction of an unconstitutional condition makes legislative response unworkable. In any of these circumstances the courts should not attempt to mandate a specific result unless identification of an appropriate remedy is reasonably within the judiciary's reach.
In sum, the problems of Indiana's system of funding public schools may be as severe as the plaintiffs allege, but I see no reasonable prospect of a judicial remedy that would be effective and properly balance the many considerations involved in redesigning the state's educational system. The most the courts could order would be to direct the legislative and executive branches to go back to the drawing board and try again to construct an improved and constitutionally acceptable system of common schools. Because we are unable to articulate any clear or even vague direction as to what standards to apply in that endeavor, the courts should acknowledge that adequacy of education, like the level of taxation, is a matter the Constitution reserves to the legislative branch. I therefore concur in the majority's ruling that this complaint must be dismissed.