863 So.2d 1176 (2003)
In re CONSTITUTIONALITY OF HOUSE JOINT RESOLUTION 25E.
No. SC03-1912.
Supreme Court of Florida.
December 4, 2003.
Charles J. Crist, Jr., Attorney General, L. Clayton Roberts, Executive Deputy Attorney General, and George L. Waas, Senior *1177 Assistant Attorney General, Tallahassee, FL, for Petitioner.
George N. Meros, Jr. and Jason L. Under of Gray, Harris & Robinson, P.A., Tallahassee, FL; Steven G. Burton and Mark M. Barber of Broad and Cassel, Tampa, FL; and Miguel Degrandy and Stephen M. Cody of Miguel Degrandy, P.A., Miami, FL, for Honorable Johnnie Byrd, Speaker, Florida House of Representatives.
James A. Scott and Edward J. Pozzuoli of Tripp Scott, P.A., Fort Lauderdale, FL, for Honorable James E. "Jim" King, Jr., President, Florida Senate.
WELLS, J.
The Attorney General petitions this Court to determine the validity of House Joint Resolution 25E, which readopts and amends section 2 of House Joint Resolution 1987, and apportions three House of Representative districts. We have jurisdiction. See art. III, § 16, Fla. Const.
On March 22, 2002, the Florida Legislature passed House Joint Resolution 1987 (HJR 1987), which apportioned the Florida Senate and House of Representatives based on the population figures established in the United States Decennial Census of 2000. Pursuant to article III, section 16(c) of the Florida Constitution, the Attorney General filed a petition for declaratory judgment in this Court, requesting that this Court determine the validity of the redistricting plan. On May 3, 2002, this Court determined that HJR 1987 satisfied the equal protection one-person, one-vote requirement and the state constitutional geographic requirement that legislative districts be either contiguous, overlapping, or identical territory. Thus, this Court declared the resolution valid. In re Constitutionality of House Joint Resolution 1987, 817 So.2d 819 (Fla.2002).
HJR 1987 was also submitted to the United States Department of Justice (DOJ) for preclearance pursuant to section 5 of the Voting Rights Act, 42 U.S.C. § 1973c (2000). The DOJ precleared the state Senate plan but interposed one objection to the state House plan. The DOJ concluded that proposed House district 101 was retrogressive within the meaning of section 5 of the Voting Rights Act with respect to Hispanic voters.
In response to the DOJ's objection, Tom Feeney, as Speaker of the Florida House of Representatives and on behalf of the House, filed a motion for emergency relief in Martinez v. Bush, Nos. 02-20244-JORDAN & 02-10028CIV-JORDAN (S.D. Fla. motion filed July 2, 2002), which was pending in the United States District Court for the Southern District of Florida.[1] In his motion, Speaker Feeney requested that the court adopt an interim plan of apportionment for the Florida House of Representatives that would remedy the DOJ's objection under section 5 of the Voting Rights Act. Speaker Feeney noted that the DOJ's denial of preclearance rendered the House plan unenforceable as a matter of law. If the court did not exercise its authority to adopt an interim plan, then the 2002 election would be severely disrupted. Speaker Feeney attached a proposed interim plan reapportioning the Florida House so as to address the DOJ's concerns.
The federal court held an emergency evidentiary hearing on the motion and thereafter granted the motion and enacted Speaker Feeney's remedial plan, finding that the Speaker's plan did in fact remedy *1178 the section 5 problem with respect to House district 101. Martinez v. Bush, Nos. 02-20244-CIV-JORDAN, 02-10028-CIV-JORDAN (S.D. Fla. order filed July 9, 2002). The plan, as approved, was effective only for the 2002 elections.
On October 20, 2003, the Legislature convened in a special session, during which the House of Representatives considered adopting the interim plan adopted by the federal court in Martinez as a permanent apportionment plan. The House passed House Joint Resolution 25E (HJR 25E) on October 21, 2003. The Senate passed the same resolution on October 24, 2003. This resolution is identical to the interim plan adopted by the federal court in Martinez. On November 4, 2003, the Attorney General filed a petition for declaratory relief in this Court pursuant to article III, section 16(c) of the Florida Constitution, requesting this Court to determine the validity of HJR 25E.
On November 6, 2003, this Court issued an order inviting all those interested to submit briefs and comments in support of or opposition to the plan. This Court received only one comment, which was filed by the Florida Senate and House of Representatives in support of the plan. This Court received no comments in opposition to the plan.
As we recently stated in considering the validity of HJR 1987, the scope of this Court's review of an apportionment plan created by the Legislature is extremely limited.
[L]egislative reapportionment is primarily a matter for legislative consideration and determination. Judicial relief becomes appropriate only when a legislature fails to reapportion according to federal and state constitutional requisites. If these requisites are met, we must refrain, at this time, from injecting our personal views into the proposed reapportionment plan. Even though we may disagree with the legislative policy in certain areas, the fundamental doctrine of separation of powers and the constitutional provisions relating to reapportionment require that we act with judicial restraint so as not to usurp the primary responsibility for reapportionment, which rests with the Legislature.
In re Constitutionality of House Joint Resolution 1987, 817 So.2d at 824 (quoting In re Apportionment Law Senate Joint Resolution No. 1305, 1972 Regular Session, 263 So.2d 797, 799-800 (Fla.1972)). This Court's review is thus limited to two considerations: (1) whether the plan satisfies the equal protection standard of one-person, one-vote; and (2) whether the plan satisfies the State constitutional requirement that the districts contain contiguous, overlapping, or identical territory. We find that HJR 25E satisfies both of these requirements.
We recently recognized that the Equal Protection Clause requires that state legislatures be apportioned in such a way that each person's vote carries the same weightthat is, that each legislator represents the same number of voters. In re Constitutionality of House Joint Resolution 1987, 817 So.2d at 826. We make this determination by analyzing the population figures in each district.
HJR 25E differs from previously approved HJR 1987 only with respect to three House districts. In approving HJR 1987, we set forth the relevant population figures for Florida for an equal protection analysis:
Florida's population is 15,982,378.[[2]] Therefore, the ideal population per single-member *1179 House district is 133,186. The most populous House district is District 98, with a total population of 135,093deviating from the ideal population by 1,857 persons, or 1.39%. The least populous House district is District 32, with a total population of 131,310deviating from the ideal population by 1,876 persons, or 1.4%. Therefore, the maximum percentage deviation between the largest and smallest number of people per representative (statistical overall range) is 2.79%.
In re Constitutionality of House Joint Resolution 1987, 817 So.2d at 825.
We further recognized in that case that "[e]ven though the districts do not comply precisely with the ideal population per district, ... `mathematical exactness is not a requirement in state apportionment plans.'" Id. at 826 (quoting In re Senate Joint Resolution 2G, Special Apportionment Session 1992, 597 So.2d 276, 279 (Fla.1992)). The United States Supreme Court has recognized that an apportionment plan with a maximum population deviation under 10% falls within the category of constitutional minor deviations. White v. Regester, 412 U.S. 755, 764, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973).
The changes made to House districts 76, 101, and 112 in HJR 25E fall well under the 10% deviation that the Supreme Court recognized as constitutionally valid. District 76 consists of a total population of 132,709deviating from the ideal population by 477 persons, or 0.36%. District 101 consists of a total population of 133,642 deviating from the ideal population by 456 persons, or 0.34%. District 112 consists of a total population of 131,626deviating from the ideal population by 1560 persons, or 1.17%. We find that the Legislature continues to achieve a mathematical preciseness in the districts, as it accomplished in HJR 1987, and that the apportionment plan thus complies with the equal protection requirements of both the Florida and United States Constitutions. See In re Constitutionality of House Joint Resolution 1987, 817 So.2d at 827 (citing Regester, 412 U.S. at 755, 93 S.Ct. 2332; Gaffney v. Cummings, 412 U.S. 735, 93 S.Ct. 2321, 37 L.Ed.2d 298 (1973)).
Our final consideration with respect to the validity of HJR 25E is whether the legislative districts are either contiguous, overlapping, or identical territory. We recently explained this requirement as follows:
This Court has defined "contiguous" as "being in actual contact: touching along a boundary or at a point." In re Apportionment Law, Senate Joint Resolution 1E, 414 So.2d 1040, 1051 (Fla. 1982) (quoting Webster's New Collegiate Dictionary 245 (1973)). A district lacks contiguity "when a part is isolated from the rest by the territory of another district" or when the lands "mutually touch only at a common corner or right angle." Id.

....
Although a contiguous district has been defined as one in which a person can go from any point within the district to any other point without leaving the district, such definition does not impose a requirement of a paved, dry road connecting all parts of a district. Contiguity does not require convenience and ease of travel, or travel by terrestrial rather than marine forms of transportation....
... [T]he presence in a district of a body of water without a connecting bridge, even if it necessitates land travel outside the district in order to reach other parts of the district, does not violate this Court's standard for determining contiguity under the Florida Constitution.
*1180 In re Constitutionality of House Joint Resolution 1987, 817 So.2d at 827-28 (quoting In re Senate Joint Resolution 2G, 597 So.2d at 279-80). Upon reviewing the changes made to districts 76, 101, and 112, we find that HJR 25E satisfies this constitutional requirement.
Accordingly, we conclude that House Joint Resolution 25E is valid and hereby approve it as the 2004 apportionment of the Florida Legislature.
It is so ordered.
LEWIS, QUINCE, CANTERO, and BELL, JJ., concur. ANSTEAD, C.J., and PARIENTE, J., concur in result only.
NOTES
[1] This case had been filed in the federal court following the passage of HJR 1987. The plaintiffs and intervenors raised several issues challenging the validity of the redistricting legislation under federal law. The federal district court ultimately approved the legislation. See Martinez v. Bush, 234 F.Supp.2d 1275 (S.D.Fla.2002).
[2] Population figures are those reported in the United States Decennial Census of 2000, upon which the Legislature based the apportionment plan.