

ATTORNEY FOR APPELLANT

Jeffrey J. Stesiak
Pfeifer, Morgan & Stesiak
South Bend, Indiana

ATTORNEY FOR APPELLEE

Robert J. Palmer
May Oberfell Lorber
Mishawaka, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew Davis, *Appellant-Plaintiff,* v. Lippert Components Manufacturing, Inc., *Appellee-Defendant.* | March 13, 2018 Court of Appeals Case No. 20A03-1710-CT-2435 Appeal from the Elkhart Superior Court The Honorable David T. Ready, Senior Judge Trial Court Cause No. 20D01-1605-CT-108 |

**Mathias, Judge.**

[1] Matthew Davis ("Davis") appeals the Elkhart Superior Court's grant of summary judgment in favor of Lippert Components Manufacturing, Inc. ("Lippert"). Specifically, Davis argues the trial court erred as a matter of law when it determined that he did not qualify as a "user" or "consumer" under Indiana's Product Liability Act ("IPLA").

We affirm.

## Facts and Procedure

Evergreen Recreational Vehicles, L.L.C., ("Evergreen") manufactured towable travel trailers in Elkhart, Indiana. Several models of their trailers contained areas of additional space containing flooring and furniture, which an owner could slide out when parked to provide more interior space in the trailer or in a recreational vehicle. These areas are constructed in the form of three-sided boxes opening to the interior of the trailer and are called "slide-outs." Lippert manufactures the Schwintek System In-Wall Slide Out ("Schwintek System") which is a mechanism attached to the slide-out box during the manufacturing process that allows the box to slide in and out of the trailer or recreational vehicle at the direction of its owner.

Davis worked for Evergreen in its "slide-out department" as a "box installer" where his job was to install the box on the trailer. Appellant's App. pp. 91, 93. Davis worked on the outside of the trailer where he would screw down the Schwintek System to the box, glue the top rubber corners of the box to prevent leaks, complete the wire harness underneath the box, hook up the light, and then use an electrical toggle switch to run the box into the trailer. After Davis was finished with his duties, the trailer still had to go through three more manufacturing departments at Evergreen before it was complete and ready for wholesale to dealers.

[5] On June 17, 2014, Davis was attaching the wire harness when the box started to move out. He assumed the box would stop moving, but it did not, and it fell out of the trailer and onto his lower back. Davis suffered significant injuries, including paralysis from the waist down.

[6] Davis filed a complaint on May 24, 2016, in which he alleged, in part, that Lippert was strictly liable for a design defect in the Schwintek System which made it "unreasonably dangerous for its reasonably foreseeable uses." *Id*. at 20. Lippert moved for summary judgment on June 29, in which it argued that Davis did not qualify as a "user" or "consumer" under the IPLA, and therefore could not state a claim under the Act. On October 10, the trial court agreed and granted summary judgment in favor of Lippert.

[7] Davis now appeals.

## Discussion and Decision

[8] Davis contends that the trial court erred in granting Lippert's motion for summary judgment. When reviewing a summary judgment, we apply the same standard as the trial court and draw all reasonable inferences in favor of the nonmoving party. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). In conducting our review, we consider only those matters that were designated at the summary judgment stage. *Haegert v. McMullan*, 953 N.E.2d 1223, 1229 (Ind. Ct. App. 2011). Summary judgment is appropriate if the designated evidence shows that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law. *Hughley*, 15 N.E.3d at 1003; Ind. Trial Rule 56(C).

[9] Here, the trial court determined that Davis was not a "user" or "consumer" as those terms are defined in the IPLA, and therefore had no claim under the Act. Who qualifies under this statutory definition is a pure question of law, which we review de novo. *Ballard v. Lewis*, 8 N.E.3d 190, 193 (Ind. 2014); *Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 975 (Ind. 2002).

[10] Indiana Code section 34-20-1-1 provides:

> This article governs all actions that are:
>
>> (1) brought by a user or consumer;
>>
>> (2) against a manufacturer or seller; and
>>
>> (3) for physical harm caused by a product;
>
> regardless of the substantive legal theory or theories upon which the action is brought.

[11] Section 34-20-2-1 then sets forth the requirements of a strict liability claim under the IPLA, and it states:

> a person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm caused by that product to the user or consumer or to the user's or consumer's property if:

> (1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;
>
> (2) the seller is engaged in the business of selling the product; and
>
> (3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

[12] The IPLA defines a consumer in Section 34-6-2-29 as:

> (1) a purchaser;
>
> (2) any individual who uses or consumes the product;
>
> (3) any other person who, while acting for or on behalf of the injured party, was in possession and control of the product in question; or
>
> (4) any bystander injured by the product who would reasonably be expected to be in the vicinity of the product during its reasonably expected use.

And Section 34-6-2-147 provides that "user" has the same meaning as "consumer" for purposes of the IPLA.

[13] Davis was not the "purchaser" of the Schwintek System, and he was the injured party—not someone "acting for or on behalf of the injured party." I.C. § 34-6-2-29. Thus, Davis must be either "an individual who uses or consumes the product" under subsection (2) or a bystander reasonably "expected to be in the vicinity of the product during its reasonably expected use" under subsection (4).

[14] Davis contends that he qualifies as an "individual who uses or consumes the product" because Lippert manufactures and sells the Schwintek System in its uninstalled and unassembled form, and Davis used it when assembling the box for the towable trailer. Davis also maintains that he qualifies under the bystander definition because the reasonable expected use of the Schwintek System is that those purchasing it will assemble and install the components on a trailer, which is what Davis was doing here when he was injured. Lippert argues that Davis does not qualify as a "user" or "consumer" under the IPLA because his injury occurred before the assembled towable trailer was delivered to the initial consumer.

[15] Both parties cite to our supreme court's decision in *Vaughn v. Daniels Company* (*West Virginia*), 841 N.E.2d 1133 (Ind. 2006), to support their opposite positions. In that case, Daniels Company contracted with Solar Sources to design and build a coal plant on Solar's premises. As part of the contract, Daniels was to design and install a heavy media coal sump. Daniels subcontracted with Trimble Engineers and Constructors to construct the plant, including assembly and installation of the coal sump. Vaughn, a Trimble employee, was injured while assembling the coal sump. He sued, and the trial court granted judgment in favor of Daniels and Solar because it determined that Vaughn was not a "user" or "consumer" of the coal sump within the meaning of the IPLA.

[16] On appeal, our supreme court upheld the trial court's grant of summary judgment but agreed with Vaughn's contention that the "use" of a product can,

in certain situations, encompass installation or assembly. *Id.* at 1139–43. The *Vaughn* court however explained that this is only true "where a manufacturer expects a product to reach the ultimate user or consumer in an unassembled or uninstalled form." *Id.* at 1141. Because Daniels was obligated to assemble and install the coal sump at the time Vaughn was injured, "Vaughn could not be a 'user' or a 'consumer' of the yet undelivered product." *Id.* at 1142. The court also determined Vaughn was not a bystander because "'use' of the product occurs only after it is delivered in the state contemplated by the arrangement between the seller and buyer." *Id.* at 1143.

[17]     Here, the slide-out unit, consisting of the Schwintek System at issue, was never intended or expected to "reach the ultimate user or consumer in an unassembled or uninstalled form." *Id.* at 1141. Evergreen produced towable trailers, and as part of its assembly, Davis installed the box, which included the Schwintek System, to create the slide-out unit. The trailer then needed to go through three more departments—trimming, final finish hangs, and a rain tunnel to check for leaks—before it was put in the yard and eventually sent to a dealer. Appellant's App. p. 98. Therefore, the user or consumer here would be the first consuming entity to obtain possession of the completed product. *See Thiele v. Faygo Beverage, Inc.*, 489 N.E.2d 562, 586 (Ind. Ct. App. 1986) (explaining that "[i]t appears the legislature intended 'user or consumer' to characterize those who might foreseeably be harmed by a product at or after its retail sale or equivalent transaction with a member of the consuming public."), *trans. denied*.

[18]   We need not reach the question of whether an owner who purchases a system such as that at issue here could be considered a user or consumer under the IPLA if injured during installation on the owner's own travel trailer or recreational vehicle, as that is not the case before us. Davis's installation of the box and the Schwintek System was part of the assembly and manufacture of the trailer *before* being released into the stream of commerce for public consumption. *See Estate of Shebel ex. Rel. Shebel v. Yaskawa Elec. America, Inc.*, 713 N.E.2d 275 (Ind. 1999) (finding an individual was a user, in part, because it was not a case of assembling component parts). As a result, we cannot say that Davis was a "consumer" or "user" under Indiana Code section 34-6-2-29.

[19]   To conclude otherwise would controvert the exclusivity of the remedy provided to employees like Davis in the Workers Compensation System. *See* Ind. Code § 22-3-2-6. It would also place ultimate purchasers of a trailer or recreational vehicle in a position where their two-year time statute of limitations period[1] to bring a claim under the IPLA would be dependent on the delivery date of a component part to a manufacturer, and not on the delivery date of the finished product to the consumer.

---

[1] Ind. Code § 34-20-3-1(b)(1).

# Conclusion

[20] Based on the facts and circumstances before us, Davis does not qualify as a "user" or "consumer" under the IPLA. Accordingly, we affirm the trial court's grant of summary judgment.

Najam, J., and Kirsch, J., concur.